1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ARTURO S. BIAG, in a representative capacity only and on behalf of other members of the public similarly situated,

Plaintiff,

v.

KING GEORGE – J&J WORLDWIDE SERVICES LLC; and DOES 1-10,

Defendant.

Case No. 20-cv-307-BAS-DEB

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

**[ECF No. 8]**

In February 2019, Plaintiff Arturo Biag filed a Complaint against Defendant King George – J&J Worldwide Services, LLC in California state court.  (ECF No. 1-3 ("Compl.").)  The original Complaint alleged violations pursuant only to California Labor Code § 2698 *et seq.*, more commonly known as the California Private Attorney General Act ("PAGA").  (*Id.*)  On April 24, 2019, Plaintiff filed his First Amended Complaint, alleging similar violations under the same law.  (ECF No. 1-5, First. Am. Compl. ("FAC").)   On January 16, 2020, Plaintiff filed a Second Amended Complaint consisting of five claims that alleged class action violations under various

– 1 –

1  sections of the California Labor Code.  (ECF No. 1-7, Second Am. Compl. ("SAC").)
2  The SAC also contains a sixth claim seeking penalties pursuant to PAGA.  (*Id.*)

3  Defendant removed the case to this Court on February 18, 2020 pursuant to 28
4  U.S.C. §§ 1331, 1332(a)(1), and 1332(d)(2).  (ECF No. 1, ("Removal").)  Plaintiff
5  now moves for remand.  (ECF No. 8, ("Mot.").)  Defendant filed an opposition to the
6  Motion (ECF No. 14, ("Opp'n")) to which Plaintiff replied.   (ECF No. 15,
7  ("Reply").)   The Court finds this Motion suitable for determination on the papers
8  submitted without oral argument.  *See* Civ. L. R. 7.1(d)(1).  For the reasons herein,
9  the Court **GRANTS** the Motion to Remand.

10  **I.    PLAINTIFF'S FACTUAL ALLEGATIONS**

11  From December 2016 to May 2018, Plaintiff worked for Defendant in a
12  nonexempt capacity.  (SAC ¶¶ 16–17.)  During this period, Plaintiff and all other
13  class members were allegedly denied the benefits and protections of the California
14  Labor Code and Industrial Welfare Commission Wage Orders.  (*Id.* ¶ 17.)
15  Specifically, Plaintiff alleges Defendant failed to: provide the class both meal and
16  rest periods (*id.* ¶¶ 25–27); pay the class both regular and overtime wages (*id.* ¶¶
17  32–33); provide the class with accurate and itemized wage statements (*id.* ¶ 38);
18  reimburse all necessary business expenses of the class (*id.* ¶ 43); and provide the
19  class with wages due (*id.* ¶ 48).  Therefore, Plaintiff, on behalf of himself individually
20  and the class, brings this action alleging violations of California Labor Code §§ 226.7
21  and 512; 510, 1194, and 1197; 226; 2802; and 201–203, respectively.  Additionally,
22  as aforementioned, Plaintiff seeks penalties pursuant to PAGA in a representative
23  capacity.  (*Id.* ¶¶ 52–61.)

24  Defendant removed this case pursuant to federal question jurisdiction (via the
25  federal enclave doctrine) and diversity jurisdiction (via both individual diversity
26  jurisdiction between Plaintiff and Defendant and class diversity jurisdiction pursuant
27  to the Class Action Fairness Act ("CAFA").)

28

– 2 –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  Accordingly, there is a strong presumption against removal jurisdiction that a defendant has the burden of overcoming.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

A plaintiff may challenge removal via a motion to remand, which must be made within thirty days of the filing of the notice of removal if the challenge concerns a procedural defect.  28 U.S.C. § 1447(c).  The propriety of removal further turns on whether the case could have originally been filed in federal court.  *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997).  A court's analysis focuses on the pleadings "as of the time the complaint is filed and removal is effected."  *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

## III.    ANALYSIS

Plaintiff argues first that Defendant's removal under both diversity jurisdiction and federal question jurisdiction was procedurally untimely, second that Defendant has not established the amount in controversy for diversity jurisdiction even if untimeliness is overlooked, and third that there is not sufficient evidence to establish federal question jurisdiction even if timeliness is overlooked. Defendant in turn asserts that its removal of all claims was timely, that it has met the amount in controversy requirements for diversity jurisdiction, and that it has sufficiently established federal question jurisdiction by way of the federal enclave doctrine.

### A.    <u>Timeliness of Plaintiff's Motion to Remand</u>

Before Plaintiff's Motion can be evaluated, the Court addresses Defendant's overarching argument that the Motion is untimely pursuant to 28 U.S.C. § 1447(c). The section clearly states that "a motion to remand the case on the basis of any defect

– 3 –

other than lack of subject matter jurisdiction must be made within thirty days after the filing of the notice of removal under § 1446(a)." 28 U.S.C. § 1447(c).  Defendant argues Plaintiff did not successfully meet this requirement, as Plaintiff filed the Motion thirty-one days after the notice of removal was filed.  (Opp'n 10.)

Indeed, Defendant's notice of removal was filed on February 18, 2020, meaning Plaintiff needed to submit his Motion to Remand by March 19, 2020. Plaintiff failed to submit the Motion by March 19, instead submitting a "notice" of motion to remand that cited "complications stemming from the COVID-19 epidemic" as the reason for delay.  (ECF No. 5.)  The Motion to Remand was not properly filed until March 20, 2020, making it a day late.

It is established that "§ 1447(c)'s thirty-day deadline is plainly mandatory." *Bilbruck v. BNSF Railway Co.*, 243 Fed. App'x 293, 295 (9th Cir. 2007).  Its purpose is "to prevent the 'shuffling [of] cases between state and federal courts after the first thirty days' based on procedural defects when each court has subject matter jurisdiction." *Maniar v. F.D.I.C.*, 979 F.2d 782, 785 (9th Cir. 1992) (internal citation omitted).  If the defects were purely procedural, the Motion would be untimely and should be denied. If, however, this Court lacks subject matter jurisdiction, then the attack could be raised at any time. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 62 (1996).

In determining whether an allegation concerning the amount in controversy is an attack on procedural sufficiency or an attack on subject matter jurisdiction, courts look toward a party's motion with a liberal construction toward the latter, noting that oscillation between the two is possible.  *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1003 (C.D. Cal. 2009).  Looking at the Motion to Remand, it is apparent that Plaintiff attacks both the procedural sufficiency of Defendant's calculations and the existence of subject matter jurisdiction.   Plaintiff continually provides his own calculations to contest Defendant's and to show why subject matter jurisdiction is

– 4 –

absent.   (Mot. 10–15.)   Moreover, the fact that the amount in controversy and calculations of both parties continued to be hotly debated in both Defendant's opposition and Plaintiff's reply demonstrates the existence of an earnest argument over subject matter jurisdiction rather than a squabble over procedural defects.

Plaintiff's Motion disputes the existence of subject matter jurisdiction and thus is not subject to the thirty-day deadline.   Additionally, as Plaintiff points out, COVID-19 and the challenges it has brought weigh in favor of non-prejudicial leniency, particularly on a one-day delay.   The Court will analyze the Motion and determine whether it has subject matter jurisdiction over this case.   It turns to the issue of diversity jurisdiction first.

**B.**   <u>**Removal Under Diversity Jurisdiction**</u>

**1.**   <u>**CAFA and PAGA Claims**</u>

Of Plaintiff's six claims, five were brought in a class capacity, namely that Defendant failed to: provide the class both meal and rest periods (SAC ¶¶ 25–27); pay the class both regular and overtime wages (*id.* ¶¶ 32–33); provide the class with accurate and itemized wage statements (*id.* ¶ 38); reimburse all necessary business expenses of the class (*id.* ¶ 43); and provide the class with wages due (*id.* ¶ 48).

Under Section 4 of CAFA (28 U.S.C. § 1332(d)(2)(A)), district courts have original jurisdiction over civil actions in which the amount in controversy exceeds $5,000,000.   CAFA notably relaxes the requirements for diversity of citizenship by only requiring any member of the class of plaintiffs to be a citizen of a different state from any defendant.   Class members' claims are allowed to be aggregated to reach the amount in controversy, and a class must consist of at least 100 members.   *Id.* at § 1332(d)(5–6).   Here, it is undisputed that there is minimal diversity between Plaintiff, a citizen of California, and Defendant, a company whose principal place of business is in Texas.   (SAC ¶ 2.)   It is also undisputed that the class has more than 100 members.   (ECF No. 8-1, at 64, ("Exhibit H").)   Thus, the only issues are the

procedural timeliness of Defendant's removal and whether it has sufficiently met the amount in controversy.

### a.   <u>Timeliness of the CAFA Claims' Removal</u>

Though 28 U.S.C. § 1446(c)(1) normally places a one-year limitation on removal, 28 U.S.C. § 1453(b) explicitly states that this limitation does not apply to a class action under CAFA.  CAFA actions are instead subject to the general thirty-day removal clock under 28 U.S.C. § 1446(b).  CAFA provides two timelines for removal: (1) "during the first thirty days after the defendant receives the initial pleading"; or (2) "during the first thirty days after the defendant receives an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable."  *Reyes v. Dollar Tree Stores, Inc.*, 781 F. 3d 1185, 1189 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(b)(1) and (b)(3)). The first time period under § 1446(b)(1) is "triggered 'if the case stated by the initial pleading is removable on its face,'" and the second time period under § 1446(b)(3) is "triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F. 3d 876, 885 (9th Cir. 2010) (internal citations omitted).

In his Complaint and First Amended Complaint, Plaintiff alleged only PAGA penalties and did not provide an amount in controversy.  PAGA claims do not qualify for CAFA jurisdiction as class actions and cannot be aggregated.  *See Baumann*, 747 F.3d at 1123; *Urbino*, 726 F.3d at 1122.  Because of this, and because Plaintiff provided no amount in controversy, Defendant was unable to remove the action pursuant to CAFA or diversity jurisdiction.  It was only after Plaintiff filed his Second Amended Complaint on January 16, 2020, wherein he alleged class action claims for the first time in addition to PAGA violations, that removability became an option for Defendant.  Defendant's removal on February 18, 2020 was, therefore,

timely.[1]  Plaintiff erroneously uses the February 2019 date of his initial Complaint as the date upon which the one-year clock for removal began to run.  By alleging class claims in his Second Amended Complaint, Plaintiff did away with the one-year limit and began the thirty-day clock.  As such, Defendant's removal pursuant to CAFA was timely.

### b.   The Amount in Controversy for the CAFA Claims

### i.   Whether PAGA Claims Can Be Included

A chief dispute between the parties' calculations of the amount in controversy for the CAFA claims is whether to include the PAGA claims in the calculation.  In *Yocupicio v. PAE Grp., LLC*, the Ninth Circuit held:

> Where a plaintiff files an action containing class claims as well as non-class claims, and the class claims do not meet the CAFA amount-in-controversy requirement while the non-class claims, standing alone, do not meet diversity of citizenship jurisdiction requirements, the amount involved in the non-class claims cannot be used to satisfy the CAFA jurisdictional amount, and the CAFA diversity provisions cannot be invoked to give the district court jurisdiction over the non-class claims.

795 F.3d 1057, 1062 (9th Cir. 2015).

By the Court's estimate, using the parties' latest math, Plaintiff's individual PAGA claims amount to no more than $18,700.  (Opp'n 16–18.)  Because these individual PAGA claims cannot be aggregated with the other class members' PAGA claims, it is therefore impossible for them to meet diversity of citizenship jurisdiction requirements standing alone.  The PAGA claims thus cannot be included to meet the CAFA amount-in-controversy requirements.  The CAFA claims must stand or fall on their own merit to reach the amount in controversy and Plaintiff's PAGA claims

---

[1] If a time period is scheduled to end on a weekend or legal holiday, Federal Rule of Civil Procedure 6(a)(2)(C) automatically extends the period until the next day that is not part of a weekend or legal holiday. Here, the time period would have expired on February 15, 2020, a Saturday.  February 17, 2020, the following Monday, was President's Day and a legal holiday. Therefore, the time period extended until February 18 and the removal was timely.

– 7 –

1   will not be used to calculate it.

2   ii.     Whether the Amount in Controversy is Met

3        Normally, when a defendant seeks to remove an action to a federal court, the

4   defendant bears the burden of showing that the amount in controversy is satisfied.

5   *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197–98 (9th Cir. 2015) (citing *Dart*

6   *Basin Operating Co. v. Owens*, 574 U.S. 81, 88–91 (2014)).   "Yet, when the

7   defendant's assertion of the amount in controversy is challenged . . . both sides

8   submit proof and the court then decides where the preponderance lies." *Id.*   Courts

9   may look to evidence outside of the complaint, including affidavits and declarations,

10  so long as such evidence is based on "reasonable assumptions" that are not "pulled

11  from thin air."   *Id.* at 1197, 1199.   It is vital that each side be given a "fair

12  opportunity" to submit proof.  *Id.* at 1200.

13       If a defendant bases its calculations on flawed assumptions or evidence that

14  cannot be relied upon, a motion to remand can be granted without a plaintiff meeting

15  the preponderance of the evidence standard with his or her own evidence.  *See Reyna*

16  *v. Fore Golf Mgmt., Inc.*, No. SA CV 14-1818-DOC (RNBx), 2015 WL 881390, at

17  *1 (C.D. Cal. Mar. 2,  2015) (granting motion to remand where plaintiff moved to

18  remand based solely on challenges to defendant's evidence and assumptions in

19  calculating the amount in controversy); *Marentes v. Key Energy Serv. Cal., Inc.*, No.

20  1:13-cv-02067 AWI JLT, 2015 WL 756516, at *3 (E.D. Cal. Feb. 23, 2015) (granting

21  motion to remand based on plaintiff's challenge to defendant's calculations as

22  "rely[ing] solely on speculation and unsubstantiated assumptions").  All evidence

23  being equal, the burden of proof still skews toward a defendant to establish

24  jurisdiction.  *See Ibarra*, 775 F.3d at 1199.

25       The Court must first determine whether both parties have been given a fair

26  opportunity to submit proof, a procedure that the Supreme Court has not defined.  *Id.*

27  *Ibarra* suggests, however, that both parties may submit extrinsic evidence such as

28

– 8 –

affidavits, declarations, or other summary-judgment-type evidence to establish the amount in controversy. *Id.* at 1197. Here, as Plaintiff pointed out in his Motion, Defendant's removal contained factual flaws relating to the length of the time period and class size. (Mot. 11–12.) Defendant apparently conceded to these flaws by changing its calculations in its opposition. (Opp'n 12–15.) Because Defendant was given a chance to recalculate and resubmit calculations and evidence regarding the amount in controversy after learning that Plaintiff was challenging the amount, the Court finds that this constitutes a fair opportunity to submit proof. Plaintiff also had the opportunity to contest the amount based on Defendant's new calculations, so no further submissions are necessary and the parties' latest calculations will be used.

The data is specifically drawn from the sworn declaration by Defendant's attorney, Christine Fitzgerald. Fitzgerald does not hold any position at King George – J&J Worldwide Services, LLC, but bases her declaration on data provided by Catherine Dyer, who is General Counsel for Defendant. (ECF No. 14-1, ¶ 1 ("Fitzgerald Decl."); ECF No. 14-3, ¶ 1 ("Dyer Decl.").) Plaintiff objects to the declarations under several Federal Rules of Evidence, but still uses the calculations provided within them to rebut Defendant's removal. The objections need not be addressed, however, because even if the Court considers the declarations in full, there are flaws in Defendant's calculations that prevent it from reaching the amount in controversy.

According to Fitzgerald's declaration, there is a class of 149 employees who worked 13,170 collective weeks (or 3,041 months) during the time period between December 1, 2016 and February 18, 2020 for an average hourly rate of $20.39. (Fitzgerald Decl. ¶¶ 1, 4.) Both parties agree that this is the correct time period. Likewise, both parties use the "benchmark" projected attorney's fees of 25% in their calculations, as per *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Defendant calculates the amount in controversy to be $7,261,997.68 under a

100% violation rate, meaning that it believes Plaintiff argues a violation was committed against each member of the class 100% of the time alleged for each claim, *i.e.* every employee experienced a violation each day. (Opp'n 12–15.) Alternatively, Defendant calculates the amount in controversy to be $4,553,371.24 under a 50% violation rate, meaning that a violation for each claim was either committed against half of the class each time or against the entire class half of the time. (*Id.*) With attorney's fees, the calculation with the 50% violation rate still surpasses the requisite threshold with a total of $5,691,714.05. (*Id.*) Plaintiff, on the other hand, asserts a 50% violation rate should be used and takes specific issue with Defendant's calculations in regard to the second claim of unpaid overtime and regular wages. (Reply 5–6.) More importantly, however, Plaintiff contests Defendant's inclusion of Labor Code § 558 penalties in the calculation, arguing that they should not be counted and that the amount in controversy instead adds up to only $1,780,995.30 when they are taken out. (*Id.*)

Plaintiff is correct that the § 558 penalties should not be included, as he does not plead them. It appears Defendant might have included the § 558 penalties to fulfill the same role as the PAGA penalties, but even if PAGA penalties had been included in the calculation, they would then be excluded under *Yocupicio*. When the § 558 penalties are removed from Defendant's calculations, five class claims remain.

The first is for class damages under Labor Code §§ 226.7 and 512 for failure to pay meal period premiums and failure to pay rest period premiums, both calculated by the equation *$20.39 per hour x 5 days per week x 13,170 weeks*. (Opp'n 14.) At a 100% violation rate, this adds up to a combined total of $2,685,363. (*Id.*) At a 50% violation rate, the total is $1,342,681.50. (*Id.*) Plaintiff does not dispute that this is the correct equation or total, but asserts that the 50% violation rate should be utilized. (Reply 6.)

The second claim is for class damages under Labor Code §§ 510, 1194, and

– 10 –

1197 for failure to pay regular wages and failure to pay overtime wages.  To calculate the regular wages, Defendant assumes a thirty-minute violation (the length of a legally mandated meal or rest period that was not given) every day for each employee, calculated by the equation *0.5 regular hours worked x $20.39 per hour x 5 days per week x 13,170 weeks*.  (Opp'n 13.)  At a 100% violation rate this equals $671,340.75; at a 50% violation rate it equals $335,670.38.  (*Id.*)  Defendant assumes the same 0.5-hour violation every day for each employee in regard to overtime wages and uses a similar equation: *0.5 hours worked x (1.5 overtime pay rate x $20.39 per hour) x 5 days per week x 13,170 weeks*.  (*Id.*)  A 100% violation rate equates to $1,07,011.13, while a 50% violation rate equates to $503,505.56.  (*Id.*)  Plaintiff argues, however, that the method Defendant uses to calculate both types of wages is flawed because it double counts the same time worked for both rates.  Plaintiff argues that if there are only thirty minutes per day that qualify as a violation, then this cannot logically be counted both as a failure to give a rest period and as a failure to pay overtime wages.  (Reply 5–6.)  When added into an employee's paid shift, the unpaid thirty minutes in question will either extend a shift past eight hours (and should then be assessed at an overtime rate) or still fall below eight hours (and should then be assessed at a regular rate).  Because it is included in both, Plaintiff argues the time is being "double counted" and it is appropriate to reduce both damages by 50%.  (*Id.*)  This equates to a 100% violation rate of $839,175.94 and a 50% violation rate of $419,587.97.  (*Id.*)  It is unnecessary for the Court to determine whether this "double counting" is valid or if a reduction is proper, as will be seen below.

The third claim is for penalties under Labor Code § 226 for failure to provide accurate itemized wage statements during the period between January 16, 2019 and January 16, 2020, which consists of 2,686 pay periods for the 149-member class.  (Opp'n 15.)  Violations under § 226 are assessed at a $50 penalty for the first violation and $100 penalty for each subsequent violation.  Cal. Labor Code

§ 226(e)(1). Defendant reached a total of $261,900 but did not clearly provide the calculation. (Opp'n 15.) By the Court's estimate, it would seem that the calculation needs to be *(149 initial pay periods x $50) + ((2,686 – 149 pay periods) x $100)*, which equals $261,150. Plaintiff does not dispute Defendant's total of $261,900, however, and it is a negligible error.

The fourth claim is for class damages under Labor Code § 2802 for failure to reimburse the class for cellphones. (Opp'n 15.) Defendant uses the calculation *$30 owed in reimbursement x 3,041 months* and reaches a total of $91,230 under the 100% violation rate and $45,615 under the 50% violation rate. (*Id.*) Plaintiff does not dispute these numbers but again asserts the 50% violation rate is the correct one to use. (Reply 6.)

The fifth and final claim is class waiting time penalties for wages at termination pursuant to Labor Code §§ 201–203, which involve twenty-three members of the class. (Opp'n 15.) Defendant uses the calculation *$20.39 per hour x 8 hours per day x 30 days x 23 employees* to reach a total of $112,552.80 in penalties. (*Id.*) Plaintiff does not dispute this total.

The disputed totals can come out four different ways:

| | 100% Violation Rate with Claim 2 "Double Counted" | 50% Violation Rate with Claim 2 "Double Counted" | 100% Violation Rate with Claim 2 Reduced by 50% | 50% Violation Rate with Claim 2 Reduced by 50% |
|---|---|---|---|---|
| Claim 1 | $2,685,363.00 | $1,342,681.50 | $2,685,363.00 | $1,342,681.50 |
| Claim 2 | $1,678,351.88 | $839,175.94 | $839,175.94 | $419,587.97 |
| Claim 3 | $261,900.00 | $261,900.00 | $261,900 | $261,900 |
| Claim 4 | $91,230.00 | $45,615.00 | $91,230 | $45,615 |
| Claim 5 | $112,552.80 | $112,552.80 | $112,552.80 | $112,552.80 |
| Subtotal | **$4,829,397.68** | **$2,601,925.24** | **$3,990,221.74** | **$2,182,337.27** |
| Total with 25% fees | **$6,036,747.10** | **$3,252,406.55** | **$4,987,777.18** | **$2,727,921.59** |

– 12 –

As illustrated, Defendant meets the amount in controversy only if the 100% violation rate and "double counting" of Claim 2 are used in calculation.  The use of the 100% violation rate for claims three and five is not disputed by Plaintiff, but it is for claims one, two, and four.  As discussed below, even if 100% violation rate is assumed for claims two and four, the language in the Complaint fails to establish a 100% violation rate for claim one, which proves fatal to the amount in controversy.

In determining which violation rate to use, parties make assumptions based on the allegations and language in the Complaint.  *Ibarra*, 775 F.3d 1198.  The *Ibarra* court specifically held, however, that when a complaint alleges a "pattern and practice" of the violation in question, that does not mean a 100% violation rate may be used and it is unreasonable for a removing defendant to assume so.  *Id.* at 1199.  Indeed, even when a complaint alleges a more egregious "uniform" or "systematic" practice of wage abuse, courts still view the allegations in conjunction with the language of the complaint to see if a 100% assumption is reasonable, particularly in the absence of data that would specifically prove a violation rate.  *See Holcomb v. Weiser Security Serv., Inc.*, 424 F.Supp.3d 840, 845 (C.D. Cal. 2019); *Vilitchai v. Ametek Programmable Power, Inc.*, No. 3:15-CV-1957-L (BLM), 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017); *Beck v. Saint-Gobain Containers*, No. 2:16-cv-03638-CAS-SK, 2016 WL 4769716, at *9 (C.D. Cal. Sept. 12, 2016).

Though claim one specifically alleges that the meal and rest period violations were "institutional and established," the actual language clearly does not support a 100% violation rate.  (*Id.* ¶ 28.)  Plaintiff states that employees "would often either miss a meal period entirely, be provided a short or untimely meal period, or be provided only one meal period."  (*Id.* ¶ 25.)  Plaintiff does not state that meal periods were denied 100% of the time to 100% of employees, only that they were denied "often."  Plaintiff also alleges Defendant "would pressure its employees to skip, or cut short, a meal period depending on customer volume," implying that the meal

– 13 –

period violations were situationally dependent.  (*Id.*)  Likewise, Plaintiff alleges that rest periods were subject to the same pressures that were dependent on customer volume, implying the same.  (*Id.* ¶ 27.)  It is therefore unreasonable for Defendant to use a 100% violation rate for claim one.

What, then, is a reasonable rate?  "District courts have found . . . that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation."  *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175,1189 (E.D. Cal. 2020); *see also Olson v. Becton, Dickinson & Co.*, No. 19cv865-MMA (BGS), 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding 25% violation rate to be appropriate based on the plaintiff's "pattern and practice" allegation); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (using 50% violation rate for meal period claim and 30% violation rate for rest period claim); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (using 60% violation rate for the meal period claim and 30% violation rate for rest period claim); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using 60% violation rate); *Oda v. Gucci Am., Inc.*, Nos. 2:14-cv-7468-SVW (JPRx), 2:14-cv-07469-SVW (JPRx), 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (using 50% violation rate).

Where allegations instead allege systematic, regular, or consistent violations, it is reasonable to assume one violation per week (a 20% violation rate).  *Sanchez v. Capital Contractors*, No. C-14-2622 MMC, 2014 WL 4773961, at *3 (N.D. Cal. Sept. 22, 2014).  The allegations in claim one arguably fit these criteria and could be subject to a 20% violation rate.  For the sake of argument however, the Court finds Plaintiff's "standard and institutionalized" allegations to be similar enough to the "policy and practice" standard to warrant the same treatment of a reasonable violation rate somewhere between 25% and 60%.

– 14 –

Even if the higher rate of 60% is used for claim one, the new figure comes out to be $1,611,217.80.  And even if the most generous construction of the other claims is used (allowing a 100% violation rate with the second claim "double counted"), the total amount in controversy is $4,694,065.60, with attorney's fees included.  Defendant cannot reach the threshold for the amount in controversy under CAFA, and therefore this Court does not have original jurisdiction under CAFA.

### 2.   Individual Claims

Defendant alternatively argues that removal is proper for Plaintiff's same Labor Code claims pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a). (Removal ¶ 1.)  Because CAFA "explicitly expands diversity jurisdiction rather than diminishes its scope," failure to meet CAFA requirements does not preclude the possibility of meeting traditional diversity jurisdiction requirements under § 1332(a). *Dittmar v. Costco Wholesale Corp.*, No. 14-CV-1156-LAB-JLB, 2014 WL 6892189, at *6 (S.D. Cal. Nov. 5, 2014).  The Third Circuit has held the same, as have various district courts.  *See Shah v. Hyatt Corp.*, 425 F. App'x 121, 124–25 (3d Cir. 2011); *Sacchi v. ABC Fin. Servs., Inc.*, Civ. No. 14-1196 (FLW), 2014 WL 4095009 (D.N.J. Aug. 18, 2014); *Martinez v. Morgan Stanley & Co.*, No. 09cv2937-L(JMA), 2010 WL 3123175, at *5 (S.D. Cal. Aug. 9, 2010).  Accordingly, the Court must next determine whether the requirements of § 1332(a) diversity jurisdiction have been met.  The Court first addresses, however, Plaintiff's argument that Defendant's removal of the individual claims was untimely.  (Reply 2–3.)

### a.   Timeliness of the Individual Claims' Removal

Under 28 U.S.C. § 1446(b)(2)(B), "[e]ach defendant shall have thirty days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal."  As per 28 U.S.C § 1446(b)(3), however, if the case is not initially removable at the time of the initial pleading, then removal may be allowed within thirty days of receipt of an amended pleading or motion that makes

– 15 –

the case removable.  Plaintiff's initial Complaint from February 13, 2019, which pled only PAGA claims, was not removable because no amount in controversy was stated and, as aforementioned, PAGA claims cannot be aggregated.  *Urbino v. Orkin Serv. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013).  Nor did the First Amended Complaint, filed on April 24, 2019, allow for removal for the same reason.  The action only became removable upon the filing of the Second Amended Complaint on January 16, 2020, wherein individual claims other than the PAGA claims were pled for the first time.  Defendant then removed the action.

However, 28 U.S.C. § 1446(c)(1) states that removal is precluded "under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  As stated, Defendant removed the action on February 18, 2020, more than one year after the action commenced on February 13, 2019.  Accordingly, removal is precluded.  Defendant implies some sort of bad faith in that Plaintiff "intentionally dragged its feet" in filing his Second Amended Complaint, but it does not point to any evidence supporting this requested stipulation.  Even if Defendant could point to evidence, the amount in controversy cannot be met, as discussed below.

### b.   The Amount in Controversy for the Individual Claims

Under 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction over civil actions between citizens of different states when the amount in controversy exceeds $75,000.  It is undisputed that there is diversity between Plaintiff, a citizen of California, and Defendant, a company whose principal place of business is in Texas.  (SAC ¶ 2.)  Thus, the only issue remaining is whether the amount in controversy is met.

In its removal, Defendant calculates the amount in controversy for the individual claims to be at least $87,330.  (Removal ¶ 45.)  Plaintiff's Motion to

– 16 –

Remand objects that the calculations lack foundation, that the PAGA penalties constitute impermissible "stacking" and are calculated with the incorrect corresponding penalties, and that the time period used in Defendant's calculations is erroneous.[2]  (Mot. 12–15.)  Plaintiff asserts that the amount in controversy is really around $30,000 less than Defendant's estimate and that the $75,000 threshold cannot be met, even with attorney's fees.  (*Id.* 14.)

In its opposition, Defendant concedes its time period calculation was erroneous but asserts that the newly calculated amount in controversy for the individual damages is $64,526.25, which would exceed the $75,000 threshold if attorney's fees are included.  (Opp'n 18.)[3]  In reply to these revised calculations, Plaintiff again asserts that the incorrect corresponding penalties are being used, that the Labor Code § 226 PAGA penalties in particular were improperly calculated, and that the regular wage and overtime damages suffer from the same logical impossibility raised in his class claims.  (Reply 6–7.)  Plaintiff instead believes the amount in controversy to be $38,623.12 at most.

As with the class claims, Plaintiff challenges Defendant's calculation of the amount in controversy and the Court must determine where the preponderance lies upon both parties having a fair opportunity to submit proof.  *Ibarra*, 775 F.3d at 1197–200.  Because Defendant was given a chance to recalculate and resubmit calculations and proof regarding the amount in controversy after having knowledge that Plaintiff was challenging the amount, this constitutes a fair opportunity and no further submissions are necessary.  The parties' latest calculations will be used.[4]

---

[2] Plaintiff's evidentiary objections regarding the foundation of the evidence need not be addressed, as Defendant is unable to show the requisite amount in controversy even if it is able to use all of its evidence.

[3] Using Defendant's numbers, the Court actually calculates the total of the claims listed to be $62,426.  Nevertheless, Defendant is correct that with 25% attorney's fees added, this total would amount to $78,032.81 and exceed the jurisdictional requirement.

[4] The parties' calculations both rely on the following assumptions: (1) Plaintiff worked five days a week for a total of forty hours per week from December 1, 2016 to May 31, 2018, (Dyer Decl.

– 17 –

First, Plaintiff takes issue with the calculation of the Labor Code § 226 PAGA penalties.  (Reply 7.)  Defendant calculates these penalties with the initial violation assessed at $250 and all subsequent violations assessed at $1,000.  (Opp'n 17.) Plaintiff argues the correct penalties should come from Labor Code § 2699(f)(2), which establishes $100 for an initial violation and $200 for each subsequent violation.  The former places the PAGA claim at $15,250 and the latter at $3,100.  This is no small difference, as the latter would place Plaintiff's claims at $62,845 with attorney's fees included and thus below the jurisdictional requirement.

Labor Code § 2699(f) states the $100 and $200 penalties apply "[f]or all provisions of this code except those for which a civil penalty is specifically provided."  Although Labor Code § 226(a) itself contains no penalties, Labor Code § 226.3 does, and states that the $250 and $1000 penalties apply for violations of §226(a).

However, there is a split of authority regarding the interplay between these two provisions, as some courts believe that § 226.3 applies only when there has been a complete failure to provide wage statements at all, not merely when the assertion is that the wage statements are inaccurate.  *See York v. Starbucks Corp.*, No. CV 08–07919 GAF (PJWx), 2012 WL 10890355, at *8 (C.D. Cal. Nov. 1, 2012); *Pelton v. Panda Rest. Grp., Inc.*, No. CV 10–8458 (MANx), 2011 WL 1743268, at *6 (C.D. Cal.  May 3, 2011).  Thus, those courts would apply the § 2699(f) penalties.  Other courts contrarily hold that § 226.3 is applicable to all violations of § 226(a), opining that § 226(a) is meant to require employers to provide adequate statements.  *Raines v. Coastal Pac. Food Distribs., Inc.*, 23 Cal. App. 5th 667, 675 (2018); *see also Magadia v. Wal-Mart Assocs.*, 384 F. Supp. 3d 1058, 1109–1110 (N.D. Cal. 2019);

¶ 6); (2) Plaintiff was paid semi-monthly, which equates to 36 pay periods over the 18-month period, (*Id.* at ¶ 7; Fitzgerald Decl. ¶ 3); and (3) Plaintiff's PAGA period for penalties is from October 10, 2017 to May 31, 2018, equating to 16 pay periods or 34 weeks, (Fitzgerald Decl. ¶ 3; SAC ¶ 18).

*Culley v. Lincare, Inc.*, 236 F. Supp. 3d 1184, 1194 (E.D. Cal. 2017).  This Court finds the rationale outlined in *Raines* persuasive and a binding state court decision pursuant to *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  *See Magadia*, 384 F. Supp. 3d at 1110 ("The Court finds that it is bound by the decision in *Raines*, the only extant state court decision interpreting the applicability of § 226.3 penalties to PAGA.").  Thus, the Court finds that the correct measure of PAGA penalties for the Labor Code § 226 violation are the amounts found in § 226.3 and that Defendant's $15,250 total is correct.

Neither Plaintiff nor Defendant, however, correctly calculate the PAGA claim all the way through.  Indeed, there is the matter of what percentage of the PAGA claim may be included in the amount in controversy calculation.  Labor Code § 2699(i) awards 75% of PAGA civil penalties to the Labor and Workforce Development Agency ("LWDA"), with the remaining 25% awarded to aggrieved employees.  There is yet another split of authority between courts on how this allocation affects what amount of the penalty may be considered in the amount in controversy.  Some courts only consider the plaintiff's 25% share of the PAGA claim, while other courts choose to consider the additional 75% that the LWDA collects as well.  The issue is undecided, but a majority of courts consider only the 25% share in calculating the amount in controversy.  *See Coffin v. Magellan HRSC, Inc.*, No. 19-cv-2047-BAS-NLS, 2020 WL 773255, at *14, (S.D. Cal. Feb. 18, 2020); *Proctor v. Helena Agri-Enters., LLC*, No. 18-CV-2834 JLS (NLS), 2019 WL 1923091, at *2 (S.D. Cal. Apr. 30, 2019).  Some courts disagree.  *See Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1048 (N.D. Cal. 2014).  But, as the Court previously held, it "finds no reason to stand with the outliers."  *Coffin*, 2020 WL 773255, at *14.  Additionally, the strong presumption against removal also weighs in favor of remand.  *Gaus*, 980 F.2d at 566.  The Court will therefore only consider Plaintiff's 25% portion of the PAGA claims for the amount in controversy.

By the Court's calculations, the total amount in controversy of Plaintiff's individual claims amounts to $49,110.94, inclusive of 25% attorney's fees per *Vizcaino*, when the PAGA claims are reduced.[5]  Defendant has not shown the amount in controversy exceeds $75,000 by a preponderance of the evidence and this Court therefore lacks diversity jurisdiction under 28 U.S.C. § 1332(a).   Plaintiff's arguments regarding "stacking", regular and overtime "double counting," and the possibility of multiple initial violations need not be addressed.  (Mot. 13; Reply 6–7.)  Defendant's removal pursuant to diversity jurisdiction, for both the CAFA class claims and individual claims, was improper.

[5]

| Claim | Individual Claims as Calculated by D | 25% for PAGA Claims |
|---|---|---|
| PAGA Failure to Pay Wages | $3,100.00 | $775.00 |
| Failure to Pay Wages | $3,802.50 | $3,802.50 |
| PAGA Failure to Pay OT Wages | $3,100.00 | $775.00 |
| Failure to Pay OT Wages | $5,703.75 | $5,703.75 |
| PAGA Missed Meal Periods | $3,100.00 | $775.00 |
| Missed Meal Periods | $7,605.00 | $7,605.00 |
| PAGA Missed Rest Periods | $3,100.00 | $775.00 |
| Missed Rest Periods | $7,605.00 | $7,605.00 |
| PAGA Wages at Termination | $100.00 | $25.00 |
| Wages at Termination | $4,680.00 | $4,680.00 |
| PAGA Failure to Provide Accurate Wage Statements | $15,250.00 | $3,812.50 |
| Failure to Provide Accurate Wage Statements | $1,550.00 | $1,550.00 |
| PAGA Failure to Reimburse | $3,100.00 | $775.00 |
| Failure to Reimburse | $630.00 | $630.00 |
| Subtotal | $62,426.25 | $39,288.75 |
| Total with 25% fees: | $78,032.81 | $49,110.94 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.      Removal Under Federal Enclave Doctrine

Defendant finally argues removal is proper pursuant to federal question jurisdiction.  (Removal ¶ 3.)  Under 28 U.S.C. § 1331, district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.  Specifically, Defendant attempts to remove under the federal enclave doctrine.  The federal enclave doctrine arises from the "Enclave Clause" of the Constitution, which grants the federal government power to exercise exclusive jurisdiction over places purchased with the consent of a state.  U.S. Const. art. I, § 8, cl. 17.  Thus, a federal enclave is a portion of land within a state over which federal courts have jurisdiction, though whether federal or state law governs is situationally dependent.

Defendant argues some of the wage and hour violations that comprise Plaintiff's claims occurred on federal enclaves.  Though Defendant has employees conducting operations at several locations that may appear to be federal enclaves, it specifically seeks to establish that Camp Pendleton Marine Corps Base and Barstow Marine Corps Base are federal enclaves where some of Plaintiff's claims occurred.[6] (ECF No. 14-4, at 2.)  However, whether or not the locations' enclave statuses have been sufficiently established is ultimately inconsequential.  For, even assuming the sites are all federal enclaves, the removal was untimely.

Removal under federal question jurisdiction is subject to the thirty-day removal clock of 28 U.S.C. § 1446(b)(2)(B), or within thirty days upon first notice of removability if removal is not facially apparent from the initial pleading, as per 28 U.S.C § 1446(b)(3).  Regarding federal enclave jurisdiction specifically, however, district courts within the Ninth Circuit have held that the facially apparent standard

---

[6] Defendant has employees working at the following locations: Corona Naval Welfare Assessment Center, Naval Weapons Station Seal Beach, Twentynine Palms Naval Hospital, Point Loma Naval Base, Barstow Marine Corps Base, and Camp Pendleton Marine Corps Base.  (Opp'n 7; Dyer Decl. ¶ 2.)

– 21 –

is inapplicable to removal.  *See Azhocar v. Coastal Marine Servs.*, No. 13-CV-155 BEN (DHB), 2013 WL 2177784 at \*2–3 (S.D. Cal. May 20, 2013); *Durham v. Lockheed Martin Corp.*, No. C03-4326 TEH, 2003 WL 25739368 at \*2–3 (N.D. Cal. Dec. 8, 2003).  Both the *Azhocar* and *Durham* courts cite *Hines v. AC & S, Inc.*, 128 F. Supp. 2d 1003, 1008 (N.D. Tex. 2001) as support, wherein the court stated that "[t]he price of removal under this obscure jurisdictional basis may simply be that of diligent investigation."  If a plaintiff has honestly stated the location of the claim, then this is sufficient to put a defendant on notice of potential removal under the federal enclave doctrine, specifically if that location is a military base.  *See Azhocar*, 2013 WL 2177784, at \*7–8 (holding a complaint alleging violations at U.S. Naval bases was sufficient); *Durham*, 2003 WL 25739368, at \*6–7 (holding a complaint alleging violations at U.S. Air Force bases was sufficient).

As aforementioned, Plaintiff filed his initial Complaint in February 2019, followed by a First Amended Complaint in April 2019 and then a Second Amended Complaint in January 2020.  If the initial Complaint adequately gave notice that the lands in question were federal enclaves, Defendant would have had to remove the action in March 2019.  Defendant states, however, that the claims were not removable under the federal enclave doctrine until February 3, 2020, when it first learned the locations in question were federal enclaves.  (Opp'n 6–7.)  Defendant removed the case on February 18, 2020, which it considers timely under 28 U.S.C. § 1446(b)(3).

Defendant cites the complexities surrounding the federal enclave doctrine as the reason why it did not ascertain these facts earlier.  (Opp'n 6–7.)  Ironically, it even states that just because it knew the location in question was a military base does not mean that it should have known the location was a federal enclave.  (*Id.*)  This is, however, precisely what it should have known, or at least looked into if it wished to preserve its option for removal under the "diligent investigation" standard used by *Azhocar*, *Durham*, and *Hines*.  Plaintiff's initial Complaint from February 2019

included an attached wage statement that clearly listed Plaintiff's work location, and therefore one of the locations in question for the claims, as Point Loma Naval Base. (Compl. at 22.)  This location was not altered in any of the amended complaints and remained one of the locations in question throughout the pleadings.  Per the *Azhocar*, *Durham*, and *Hines* standard, Defendant first received notice that the location or locations in question may be federal enclaves in February 2019 when it received Plaintiff's initial Complaint.  Defendant's February 2020 removal is far outside the thirty-day removal clock and is therefore untimely and improper.

## IV.   ATTORNEY'S FEES

Plaintiff requests he be awarded the attorney's fees he incurred as a result of Defendant's improper removal.  (Mot. 18–19.)  A court may award attorney's fees upon a successful motion to remand under 28 U.S.C. § 1447(c), but not as a matter of course.  "Absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).  Because of the complexity of the issues in this case and the fact that Plaintiff's Motion is granted partly on procedural grounds, the Court finds the removal had an objectively reasonable basis and thus declines to award fees.

/ / /

– 23 –

**V.    CONCLUSION**

Defendant's removal of this action pursuant to diversity jurisdiction for both CAFA and individual claims was substantively improper because it did not reach the amount in controversy thresholds for either.  Its removal pursuant to federal question jurisdiction under the federal enclave doctrine was untimely.  Plaintiff's Motion to Remand is **GRANTED** and the case is **REMANDED** to the Superior Court of California, County of San Diego.  The Court declines to award fees.

**IT IS SO ORDERED.**

**DATED: July 22, 2020**

Hon. Cynthia Bashant
United States District Judge

– 24 –